**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:15-cr-00178-GMN-GWF |
| vs. ) | |
| ) | **ORDER** |
| NAJEEB RAHMAN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court is Defendant Najeeb Rahman's ("Defendant") Emergency Motion for Compassionate Release; and to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, (ECF No. 125).[1] The Government filed a Response, (ECF No. 126), and a Sealed Exhibit, (ECF No. 127). Defendant filed a Reply, (ECF No. 130), and two Supplements, (ECF Nos. 129, 131), to his Motion.[2] For the reasons discussed below, Defendant's Motion is **DENIED**.

**I.  BACKGROUND**

The parties are familiar with the facts, so the Court will not repeat them here except where necessary to resolve the Motion.

///

---

[1] The instant Motion seeks varied forms of relief in violation of Local Rule IC 2-2(b) of the District of Nevada. D. Nev. LR IC 2-2(b) ("For each type of relief requested or purpose of the document, a separate document must be filed and a separate event must be selected for that document."). The Court will consider the omnibus filings in this instance. However, the Court cautions Defendant to comply with this rule.

[2] Also pending before the Court is the Government's Motion for Leave to File Sealed Exhibit, (ECF No. 128). Because of Defendant's privacy interest in his medical records, the Court **GRANTS** the Government's Motion. *See, e.g.*, *Johnsen v. Tambe*, No. 19-141-TSZ-MLP, 2019 WL 4014256, at *2 (W.D. Wash. Aug. 26, 2019) (finding plaintiff's "privacy interest in his own medical records to be a sufficiently compelling reason to seal the medical records themselves.").

**A.	Defendant's Prior Criminal Case, 2:08-cr-00126-KJD-PAL**

In January 2010, Defendant appeared in the District of Nevada, and pled guilty to Fraudulent Transactions with Access Devices Issued to Other Persons in violation of 18 U.S.C. § 1029(a)(5) (Count One), and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A (Count Two), in *United States of America v. Najeeb Rahman*, Case No. 2:08-cr-00126-KJD-PAL (D. Nev.).[3] (Mins. of Proceedings, 2008 ECF Nos. 93, 94); (Plea Mem., 2008 ECF No. 95). Defendant was sentenced to a total of 72 months' custody and 3 years' supervised release. (Mins. of Proceedings, 2008 ECF No. 127).

In October 2013, Defendant began serving his term of supervised release. (Pet. for Warrant at 2, 2008 ECF No. 203). On October 3, 2014, the U.S. Probation Office filed a Petition for Warrant for Offender Under Supervision alleging that Defendant had violated the terms of his supervised release by committing a new crime, Theft in violation of NRS 205.0832. (*Id.* at 3). Specifically, the Petition alleged Defendant fraudulently represented he owned a home and purported to rent it to a woman ("L.C."). (*Id.*). Defendant collected $4,300 from L.C., representing that the monies would cover first and last months' rent and security deposit. (*Id.*). However, Defendant did not provide the $4,300 to the actual owner of the home. (*Id.*).

Before Defendant's revocation hearing could occur, the Probation Office filed a second Petition for Warrant on March 11, 2015, which added allegations that Defendant violated the conditions of his supervision by entering financial contracts without the approval of his probation offer. (Pet. for Warrant at 2–3, 2008 ECF No. 223). According to the March 11, 2015 Petition, Defendant represented to a real estate agent that he was a "private lender" worth "millions" and offered to finance a loan for the purchaser of a church listed for $850,000. (*Id.* at

---

[3] "2008 ECF No." refers to the docket entry number of a document filed in Case No. 2:08-cr-00126-KJD-PAL. "2015 ECF No." refers to the docket entry number of a document filed in the instant case.

2, 6). When the buyer of that church could not obtain other funding, the buyer entered into a financial contract with Defendant and gave Defendant $280,000 to cover the down payment and fees. (*Id.* at 2–3, 6). Defendant failed to deposit the money in escrow, fund the loan, or return the money. (*Id.* at 6). The March 11, 2015 Petition further alleged that Defendant's son came to L.C.'s residence on the evening of March 2, 2015, and that on a separate occasion, Defendant (through a third party) contacted L.C. and requested she call the District Attorney to drop theft charges against Defendant. (*Id.* at 4).

On March 25, 2015, Probation amended the first Petition for Warrant to allege that Defendant had committed a new crime, Grand Larceny in violation of NRS 205.220, based on his interactions with the church. (Addendum at 2, 2008 ECF No. 227).

On June 22, 2015, the Government and Defendant reached a plea agreement to resolve his supervised release violations, as well as new federal charges arising from Defendant's defrauding of the church. (Plea Agreement, 2008 ECF No. 247); (Plea Agreement, 2015 ECF No. 13). That same day, a revocation hearing was held, during which Defendant admitted to all the violations in the Petitions for Warrant (2008 ECF Nos. 203, 223), and the Addendum, (2008 ECF No. 229). (Mins. of Proceedings, 2008 ECF No. 246). District Judge Roger L. Hunt sentenced Defendant to 16 months' custody. (Revocation J., 2008 ECF No. 248).

**B.     The Instant Case**

On October 1, 2015, the Government filed a Criminal Information, (2015 ECF No. 11), in the instant case, charging Defendant with one count of Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. §§ 1343, 1349, and 3147. The basis of the Criminal Information was Defendant's interactions with the buyers of the church. (*Id.*).

Additionally, on October 1, 2015, this case was unsealed, and Defendant pled guilty pursuant to the same plea agreement executed on June 22, 2015. (Mins. of Proceedings, 2015 ECF No. 17). While Defendant's sentencing hearing was originally scheduled for January 11,

2016, (*see id.*), the hearing was continued numerous times. (*See, e.g.*, Orders Granting Stipulations to Continue, 2015 ECF Nos. 19, 22, 24, 27).

On October 25, 2016, Defendant filed a Motion to Withdraw Plea, (2015 ECF No. 45). An evidentiary hearing was held, and on March 30, 2017, Defendant's Motion was denied. (Mins. of Proceedings, 2015 ECF No. 66).  In April 2017, Defendant was sentenced to 96 months' custody to run "concurrent to NV Case # 2:08-cr-00126-RLH-PAL." (Mins. of Proceedings, 2015 ECF Nos. 72, 73); (J., 2015 ECF No. 75).  At the time of Defendant's sentencing, Defendant had already completed his sentence in Case No. 2:08-cr-00126-RLH-PAL. (*See* Revocation J., 2008 ECF No. 248) (providing June 22, 2015, as the "date of imposition of judgment," and sentencing Defendant to 16 months' custody, with no supervision to follow).  The instant case was assigned to the undersigned in June 2020. (Clerk's Notice, ECF No. 132).

Defendant is currently serving his sentence at the Englewood Federal Correctional Institute (FCI), and the Bureau of Prisons' (BOP) website reflects March 4, 2023, as his release date. *Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited August 19, 2020).  Defendant moves for compassionate release arguing his age and medical ailments put him at an increased risk of COVID-19 complications. (Def.'s Mot. ("Mot") at 7–14, ECF No. 125).  Defendant further contends his release is warranted because his wife suffers from, *inter alia*, Alzheimer's and Defendant is the only available caregiver. (*Id.* at 15–18). Moreover, Defendant moves to correct his sentence under 28 U.S.C. § 2255, asserting that Defendant "was to have received a 16-month credit for time served (whether through variance or imposition of concurrent sentence) which he has not received." (*Id.* at 22–26).

///

///

## II. DISCUSSION

### A. Motion for Compassionate Release

#### 1. Legal Standard

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), authorizes the sentencing court to modify a defendant's sentence in limited circumstances. 18 U.S.C. § 3582(c)(1)(A). The sentencing court may order compassionate release, "if after considering the factors set forth in 18 U.S.C. § 3553(a)," the defendant has demonstrated: (1) he has exhausted his administrative remedies; (2) "extraordinary and compelling reasons" warrant a reduction in his sentence, and (3) he is not "a danger to the safety of any other person or the community." 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13.  Under United States Sentencing Guideline § 1B1.13, "extraordinary and compelling reasons" include, among other things, terminal illnesses and medical conditions "that substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13.  The court may also consider "other reasons" including a "reason other than, or in combination with" a reason specifically provided in the Sentencing Guidelines. *Id.*  The decision to grant compassionate release is in the sentencing court's discretion. *See United States v. Wade*, 2:99-cr-00257-CAS-3, 2020 WL 1864906, at *5 (C.D. Cal. Apr. 13, 2020).  The defendant is not entitled to be present for a hearing on a motion for compassionate release. *See* Fed. R. Crim. P. 43(b)(4).

#### 2. Analysis

Defendant seeks compassionate release due to the COVID-19 pandemic; his underlying health conditions; and his wife's health conditions and purported inability to care for herself. (Def.'s Mot. ("Mot.") at 13–18, 2015 ECF No. 125).  The Government opposes, arguing that the BOP has successfully prevented the spread of COVID-19 to inmates at FCI Englewood;

Defendant's health is stable; Defendant's wife's health does not warrant release; and Defendant remains a danger to the community. (Resp. at 13–21, 2015 ECF No. 126)

*(i)    exhaustion*

Before a defendant may file a § 3582(c)(1)(A) motion, he must either (1) exhaust any administrative appeals of the warden's refusal to bring a motion or (2) wait thirty days from the warden's receipt of the request, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

Here, Defendant submitted his first petition for compassionate release to the warden in April 2018, on grounds that his wife was suffering from physiological and psychological maladies, and that Defendant was the only person available to care for her. (Mot. at 6); (Release Request, Ex. B to Resp., 2015 ECF No. 126-1).  The warden denied that petition on June 26, 2018. (Mot. at 6); (Warden's Denial Letter, Ex. C to Resp., 2015 ECF No. 126-2).  Defendant subsequently filed a request for reconsideration, which the warden also denied. (*See* Mot. at 6). On April 7, 2020, Defendant made a written request to the warden for home confinement citing the danger associated with COVID-19. (*Id.*).  The warden denied this request on April 22, 2020. (Warden Denial Letter, Ex. 6 to Mot., 2015 ECF No. 125-6).

In light of the above, and because the Government does not dispute that Defendant has met the exhaustion requirement, the Court finds Defendant has sufficiently exhausted his administrative remedies.

*(ii)    extraordinary and compelling reasons*

Defendant contends his release is warranted because his wife suffers from dementia, Alzheimer's, seizures, and osteoarthritis. (Mot. at 15–18).  According to Defendant, he is his wife's only available caregiver. (*Id.*).  In support of his Motion, Defendant provides medical records which indicate his wife is in stable condition, has been diagnosed with dementia, and suffers from pseudo seizures and osteoarthritis. (Exs. 9, 11–14 to Mot., 2015 ECF Nos. 125-9, 125-11–125-14).  As for her Alzheimer's diagnosis, Defendant provides a one-paragraph letter

from a neurologist stating that "Mrs. Rahman has a probable diagnosis of Alzheimer's disease." (Ex. 8 to Mot., 2015 ECF No. 125-8). However, Defendant does not provide medical records indicating Defendant's wife has in fact been diagnosed with Alzheimer's.

Assuming *arguendo*, that Defendant's wife is severely ill and cannot care for herself, Defendant fails to demonstrate that he is the only available caregiver. Indeed, Defendant has an adult son and adult daughter who live in Las Vegas. (Mot. at 17). Defendant submits that his son and daughter each have young children and therefore "cannot provide the '24/7' care and attention his wife needs." (*Id.*). However, the only evidence regarding Defendant's children's ability to care for their mother comes from her primary physician, who told the BOP in 2018 that Defendant's "two children are providing the necessary care at this time, and the current prognosis is good." (Warden's Denial Letter, Ex. C to Resp.). There is no evidence that Defendant's children have not been sufficiently caring for Defendant's wife for the past two years. As such, the Court does not find extraordinary and compelling reasons to warrant Defendant's release.

Next, Defendant maintains extraordinary and compelling reasons for granting compassionate release exist because his advanced age and medical conditions put him at greater risk of several illness from COVID-19. (Mot. at 13–14). Specifically, Defendant asserts that he suffers from diabetes, hypertension, and rheumatoid arthritis, "all pre-existing conditions that decrease the odds of survival once infected." (*Id.* at 2).

The Government does not dispute that Defendant suffers from said medical conditions. Rather, the Government argues that Defendant's diabetes is "stable" and that Defendant has not taken medication for this condition since 2018. (Resp. at 17). Defendant disagrees and contends BOP lab results show otherwise. (Reply at 5–6, 2015 ECF No. 130); (Suppl. to Mot., 2015 ECF No. 129).

The COVID-19 pandemic is grave and there is little doubt that Defendant's conditions, put him at a higher risk of COVID-19 complications under the CDC guidance. Individuals like Defendant who are in their "60s or 70s are, in general, at higher risk for severe illness" from the virus,[4] and the risk increases if the individual has underlying medical conditions like type 2 diabetes.[5] Further, individuals suffering from hypertension "might be at an increased risk for severe illness from COVID-19." [6]

But as the Government argues, the BOP has implemented a detailed COVID-19 response plan for federal inmates, and the low number of reported cases at Englewood FCI suggests that the plan is effective there. *BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/ coronavirus/covid19_status.jsp (last visited Aug. 21, 2020). The BOP's website reflects that just three inmates and zero staff members at Englewood FCI are currently COVID-19 positive. *See COVID-19: Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Aug. 21, 2020). Because there is little to indicate that COVID-19 is spreading rapidly in Defendant's institution, Englewood FCI, the Court is not persuaded that extraordinary and compelling reasons exist for Defendant's release.

### *(iii)   danger to the community*

Even if Defendant's medical conditions in the context of the COVID-19 epidemic did constitute extraordinary and compelling reasons, the Guidelines provide that an inmate may be granted compassionate release only if he is not a danger to any other person or to the

---

[4] *See Older Adults and COVID-19*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Aug. 20, 2020).
[5] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 21, 2020) (listing underlying conditions that put "[p]eople of any age . . . at increased risk of severe illness from COVID-19" and listing Type 2 diabetes mellitus as a definite risk diagnosis).
[6] *Id.* However, rheumatoid arthritis is not listed by the CDC as a condition that causes, or might cause, increased risk for severe illness from COVID-19.

community, as provided in 18 U.S.C. § 3142(g). *United States v. Johnson*, 2020 WL 2114357, at *1 (E.D. Wash. May 4, 2020) ("[T]he Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act."). The Ninth Circuit has held "that danger may, at least in some cases, encompass pecuniary or economic harm." *United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992).

Pursuant to § 3142(g), the Court first considers the nature and circumstances of the offense for which Defendant was convicted. Defendant pled guilty to one count of Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. §§ 1343, 1349, and 3147. In his plea agreement, he admitted that he entered into a conspiracy to obtain money and property from a church by posing as a "hard money lender" who would provide funds to the church. (Plea Agreement at 5, 2015 ECF No. 13). The church had acquired about $300,000 in cash to obtain real estate, had secured some financing, but did not have sufficient financing to complete the purchase. (*See id.* at 6–7). Defendant falsely and fraudulently represented to the church that he could provide funding for the real estate transaction, causing the church to give him $280,000. (*Id.*). Defendant never provided the funding he had fraudulently promised. (*Id.* at 7). As a result of Defendant's conduct, the victim lost an additional $30,000 that it had deposited into escrow for the transaction. (*Id.*).

The second factor to be considered by the Court, the weight of the evidence, is largely irrelevant in a motion for compassionate release as Defendant has been convicted and sentenced. The Court simply notes that Defendant's guilt and his criminal conduct is established by the admissions he made in his guilty plea.

Most pertinent to determining whether Defendant poses a danger if released is his history and characteristics, which establish that he presents a high risk of causing economic and pecuniary harm to others if released. As discussed above, Defendant pled guilty to Fraudulent Transactions with Access Devices Issued to Other Persons in violation of 18 U.S.C.

§ 1029(a)(5) (Count One), and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A (Count Two), in *United States of America v. Najeeb Rahman*, Case No. 2:08-cr-00126-KJD-PAL (D. Nev.).  Defendant completed his custodial sentence, began his term of supervised release, and within months violated his terms of supervision by committing several additional economic crimes against others.  In June 2014, he fraudulently represented to a victim that he owned a house, and that he would rent the house to the victim. (*See* Pet. for Warrant, 2008 ECF No. 203).  Then in January 2015—despite being subject to a pending petition to revoke his supervised release for engaging in further crimes—Defendant committed the offense underlying his current conviction and sentence. (*See* Pet. for Warrant, 2008 ECF No. 223).

In October 2015, Defendant pled guilty in the instant matter.  Defendant's sentencing hearing was held in April 2017. (Mins. of Proceedings, 2015 ECF Nos. 72, 73).  At sentencing, the Government sought an enhancement to Defendant's sentence based on his conduct toward the victim subsequent to pleading guilty. (Sentencing Tr., 2015 ECF No. 82).  The Government proffered evidence that, while Defendant was in custody in July 2016, he attempted to settle a civil suit brought by the victims of the instant offense on condition that the victims provide an affidavit that they neither initiated nor wanted criminal charges filed against Defendant. (*Id.*).  Defendant further required that the affidavit assert the victims did not want Defendant to be prosecuted for the instant case. (*Id.*).

A month later, and while still in custody, Defendant offered the victims a payment of $125,000 on condition that the victims provide an affidavit that they were "coerced and tricked into joining this complaint." (*Id.* 32:7–20).  As a result of this conduct, Defendant's sentence was enhanced for his attempts to obstruct justice subsequent to pleading guilty. (*Id.* 33:1–8).

Having considered the relevant factors, the Court finds that Defendant poses a significant and serious threat that he will engage in additional criminal conduct against other persons and against the community if released.  Defendant has demonstrated that, even when

on supervised release and subject to a petition to revoke that release, he is willing to engage in criminal conduct causing significant pecuniary harm to others. Accordingly, the Court finds that Defendant has not met his burden of showing that, if released, he will not be a danger to the safety of others and the community. *See United States v. Giordano*, 370 F. Supp. 2d 1256, 1270 (S.D. Fla. 2005) ("no question that an economic danger, like that posed by a serial defrauder, falls under the broad umbrella of 'dangerousness' as that term is used in the Bail Reform Act").

### *(iv)    18 U.S.C. § 3553(a) factors*

Finally, the factors under § 3553(a) do not support early release. As discussed above, the nature and circumstances of the offenses were serious, and at the time he committed the instant crime, Defendant was on supervised release for a prior fraud. The Court believes that Defendant should serve the full sentence which was imposed in order to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of Defendant, and avoid unwarranted sentencing disparities.

Accordingly, Defendant's Motion for Compassionate release is **DENIED**.

**B.    Motion to Vacate, Set Aside, or Correct Sentence**

**1.    Legal Standard**

Under 28 U.S.C. § 2255, a petitioner may file a motion requesting the Court which imposed sentence to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Such a motion may be brought on the following grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack." *Id.*; *see United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010).

Motions pursuant to § 2255 must be filed within one year from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). "[A] district court may deny a Section 2255 motion without an evidentiary hearing only if the movant's allegations, viewed against the record, either do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989). "No evidentiary hearing is necessary when the issue of credibility can be conclusively decided on the basis of documentary testimony and evidence in the record." *Shah v. United States*, 878 F.2d 1156, 1160 (9th Cir. 1989).

### 2. **Analysis**

Defendant argues his sentence "was/is inconsistent with the intent of the parties and the express proclamation of [the sentencing judge], subjecting it to collateral attack," under to 28 U.S.C. § 2255. (Mot. at 22). Defendant maintains that prior to his sentencing in the instant case, the parties agreed to a "16-month credit for time served (whether through variance or imposition of concurrent sentence) which he has not received." (*Id.* at 26). During Defendant's sentencing hearing, his counsel noted that Defendant could no longer take advantage of a concurrent sentence because he had fully served his sentence in Case No. 2:08-cr-00126-KJD-PAL. (*Id.* at 24–25) (citing Sentencing Tr. 22:25–23:14, 2015 ECF No. 82). Defense counsel then indicated the Government had stipulated to a 16-month variance. (*Id.* at 24). At that point, the Government addressed the issue, but "did not expressly repudiate [the stipulation]." (*Id.* at 25) (citing Sentencing Tr. 23:22–24:21). After hearing statements from defense counsel and the Government, the sentencing judge imposed a concurrent sentence. (*See id.*). Defendant contends that by imposing a concurrent sentence, the sentencing judge intended to confer a 16-month credit for time served. (*Id.* at 25–26).

In response, the Government acknowledges that at one point in time, the parties had agreed to recommend that Defendant's sentence in the instant case run concurrently with his

sentence in the 2008 case. (Resp. at 24). However, the Government argues that Defendant freed the Government from its sentencing position "when he moved to withdraw his guilty plea and attempted to bribe the victims into recanting." (*Id.*). The Government further contends that Defendant waived his right to collaterally attack his sentence in his plea agreement. (*Id.* at 23).

"Plea agreements are contractual in nature and must be measured by contract law standards." *United States v. De la Fuente*, 8 F.3d 1333, 1337–38 (9th Cir. 1993) (quoting *United States v. Keller*, 902 F.2d 1391, 1393 (9th Cir. 1990)). The application of contract law to plea agreements is premised on "the notion that the negotiated guilty plea represents a bargained-for quid pro quo." *United States v. Partida–Parra,* 859 F.2d 629, 633 (9th Cir. 1988). "The courts enforce the literal terms of the plea agreement, but construe ambiguities in favor of the defendant[.]" *United States v. Franco-Lopez*, 312 F.3d 984, 989 (9th Cir. 2002) (internal citations omitted).

Here, Defendant's plea agreement states: "The defendant also knowingly and expressly *waives all collateral challenges*, including any claims under 28 U.S.C. § 2255, to his conviction, sentence, and the procedure by which the Court adjudicated guilt and imposed sentence, *except nonwaivable claims of ineffective assistance of counsel*." (Plea Agreement 16:5–8, 2015 ECF No. 13) (emphasis added). The plea agreement further indicates that "[i]t does not bind . . . the Court." (*Id.* 1:20–23). Moreover, while the plea agreement provides that the parties will jointly recommend a concurrent sentence, it does not state that the parties will recommend a 16-month variance for time served. (*See id.* 13:7–13).[7]

Notwithstanding the unequivocal terms of the plea agreement, Defendant now collaterally challenges his sentence arguing he is entitled to a 16-month reduction. Defendant,

---

[7] Specifically, Defendant's plea agreement states: "The defendant and the Government jointly recommend a sentence within the applicable guideline range of 16 months to be imposed for the defendant's supervised release violations [in Case No. 2:08-cr-00126]. The defendant and the Government expressly agree to recommend that sentence should be imposed concurrently with any term of imprisonment imposed against the defendant [in Case No. 2:15-cr-00178.]" (Plea Agreement 13:7–13, 2015 ECF No. 13).

however, provides no legal authority which would allow this Court to disregard the plea agreement's express language. Nor does Defendant contend that the instant collateral challenge constitutes a nonwaivable ineffective assistance of counsel claim, thus falling within the waiver exception.[8] Instead, Defendant submits that "[t]his is not a collateral attack in the traditional sense but simply an effort to correct a clear mistake; a clerical error if you will." (Reply at 11). Defendant's argument is unavailing.

A court generally may not correct or modify a prison sentence once it has been imposed. 18 U.S.C. § 3582(c); *see also Barragan-Mendoza,* 174 F.3d 1024, 1028 (9th Cir. 1999) (noting that district courts do not have "inherent authority" to reconsider sentencing orders). A court may modify such a sentence only "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."[9] 18 U.S.C. § 3582(c)(1)(B). Rule 35(a) states: "Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a). The Ninth Circuit and "other circuit courts have held that the fourteen-day deadline is jurisdictional, thus divesting the district court of the power to amend the sentence after fourteen days." *United States v. Aguilar-Reyes*, 653 F.3d 1053, 1055 (9th Cir. 2011) (citation omitted); *United States v. Miller*, 594 F.3d 172, 182 (3d Cir. 2010); *United States v. Griffin*, 524 F.3d 71, 83 n.14 (1st Cir. 2008). Here, to

---

[8] Defendant briefly notes that the sentencing judge "errantly imposed a concurrent sentence," and both Government and defense counsel "knew, or should have known," that the sentence was incorrect, "and said nothing at the time to prompt this Court to correct it." (Reply at 12, ECF No. 130). However, this is insufficient to raise the issue of ineffective assistance of counsel. Moreover, while pro se motions from prisoners are to be liberally construed," *United States v. Seesing*, 234 F.3d 456, 462 (9th Cir. 2000), *as amended* (Jan. 29, 2001), this is not a pro se proceeding. *See Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) ("We therefore are not bound to construe [the defendant's] pleadings liberally; much less ought we to construe them in such a way as to construct for [the defendant] the case that he has not made.").

[9] A sentence can also be modified under Federal Rule of Criminal Procedure 36, which provides that "the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed. R. Crim. P. 36. As the Ninth Circuit has previously explained, "[a] change under [Rule 36] can do no more than conform the sentence to the term which the record indicates was intended." *United States v. Kaye,* 739 F.2d 488, 490 (9th Cir. 1984). Here, the record shows that the sentencing judge's oral pronouncement of Defendant's sentence, (Sentencing Tr. 37:24–38:15), is the same as the sentence written in the judgment. (J. at 2, 2015 ECF No. 75). As such, Rule 36 does not apply.

the extent Defendant's Motion could be construed as a Rule 35(a) motion, it is untimely because it was not filed within 14 days of Defendant's April 2017 sentencing. Consequently, even if the Court found Defendant's sentence "resulted from arithmetical, technical, or other clear error," the Court would not have the power to correct it under Rule 35(a).

In sum, Defendant has failed to show that he is entitled to relief under 28 U.S.C. § 2255. Pursuant to the literal terms of the plea agreement, which the Court must enforce, *Franco-Lopez*, 312 F.3d at 989, Defendant waived his right to bring the instant collateral challenge. Further, the plea agreement did not provide for a 16-month variance—and even if it did, the sentencing judge was not obligated to grant such a variance because the plea agreement did not bind the Court. In addition, the record reflects that the variance issue was raised and addressed at the sentencing hearing. Once the sentence was imposed, neither party asked for clarification, nor otherwise brought this matter to the sentencing judge's attention. Lastly, while the Federal Rules of Criminal Procedure allow the Court to correct or modify a sentence under particular circumstances, Defendant has not shown such circumstances are present here. Accordingly, Defendant's Motion to Vacate, Set Aside, or Correct sentence is **DENIED**.

Further, the Court finds that because Defendant's Motion is based on the record, an evidentiary hearing is unnecessary for it to reach this conclusion. *See United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989) ("The district court may deny a section 2255 motion without an evidentiary hearing only if the movant's allegations, viewed against the record, either do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal.").

### 3. Certificate of Appealability

Additionally, the Court will not issue a certificate of appealability, which is required for Defendant to proceed with an appeal of this Order. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950–51 (9th Cir. 2006); *see also United States*

*v. Mikels*, 236 F.3d 550, 551–52 (9th Cir. 2001).  This means that Defendant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  He bears the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Slack*, 529 U.S. at 483–84.

The Court has considered the issues raised by Defendant with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that the issues do not meet that standard.  The Court therefore **DENIES** Defendant a certificate of appealability.

### III. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A), (ECF No. 125), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, (ECF No. 125), is **DENIED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue.

**IT IS FURTHER ORDERED** that Government's Motion for Leave to File Sealed Exhibit, (ECF No. 128), is **GRANTED**.

**DATED** this 24 day of August, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court